**LIBERTY MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Emmett HORTON, Appellee.**

**No. 17958.**

United States Court of Appeals Fifth Circuit.

Feb. 22, 1960.

Rehearing Denied April 8, 1960.

Howell Cobb, Orgain, Bell & Tucker, Beaumont, Tex., for appellant.

Joe H. Tonahill, Floyd W. Addington, Jasper, Tex., for appellee.

Before RIVES, Chief Judge, and HUTCHESON and JONES, Circuit Judges.

HUTCHESON, Circuit Judge.

This is an appeal from a judgment dismissing for want of jurisdiction a

**150**

workmen's compensation suit filed by appellant, Liberty Mutual Insurance Company, in the United States District Court for the Eastern District of Texas. It was brought to set aside an award of the Industrial Accident Board of Texas, and to be relieved from the employee's claim against it that he became totally and permanently disabled and entitled to an award, under the Texas Compensation Act, of $14,635.00, as a result of an accidental injury incurred while in the course of his employment on a job where Liberty Mutual Insurance Company was the compensation insurer.

Jurisdiction was founded upon diversity of citizenship: in that appellant is a Massachusetts corporation and Emmett Horton is a resident citizen of Texas; and upon the good faith allegation that more than $10,000.00 was in controversy: in that Horton allegedly was injured on October 8, 1957, while employed by American Bridge Division of United States Steel Corporation in Orange County, Texas; that Liberty Mutual Insurance Company, appellant, was the workmen's compensation carrier for the employer; that Horton filed his statement with the Industrial Accident Board claiming total and permanent disability at a rate of $35.00 per week for 401 weeks, or a total of $14,035.00; and that on April 30, 1959, the Board entered its award allowing Emmett Horton $35.00 a week for 30 weeks, a total of $1050.00.

Horton answered, and, in addition, filed a cross-action for total and permanent disability, 401 weeks at $35.00 a week, a total of $14,035.00, alleging diversity of citizenship and an amount in excess of $10,000 in controversy.

■ On motion by Horton to dismiss the suit for want of jurisdiction, the district judge turned his face away from the controlling decision of the Texas Supreme Court and from the many decisions of this court, declaring that Federal Court Jurisdiction in Texas Workmen's Compensation suits is a special jurisdiction and, in exercising it, the court is bound by, and must strictly follow, the construction placed on the statutes by the state courts. Advancing as his sole reason for doing so his reliance on National Surety Co. v. Chamberlain, 171 F.Supp. 591, an opinion of the District Court for the Northern District of Texas, he declined to follow the settled law to the contrary, and, holding that there was no jurisdiction in the federal court, since the order of the board was for less than $10,000.00, the amount in controversy was less than the requisite jurisdiction, he dismissed both the original action and the counter claim.

■ Appealing from this order, the insurer is here insisting that, for the reason set out in the margin,[1] the district court erred in holding that the amount in controversy did not exceed $10,000.00, and in dismissing the cause. For the reasons following and upon the authorities hereafter set down, we agree that this is so.

■ Under Article 8307, Section 5, Vernon's Texas Statutes, either party may bring a de novo action to set aside an award. In the authoritative case of

---

1. (a) In a suit founded upon diversity of citizenship filed by the insurer directly in Federal Court under the Texas Workmen's Compensation Law, the amount in controversy is ascertained by the amount claimed by the employee before the Industrial Accident Board, since the right the insurer seeks to protect is the right to be free from the claimed liability. Cf. Booth v. Texas Employers, 1938, 132 Tex. 237, 123 S.W.2d 322, and General Accident, Fire & Life Assur. Corp. v. Mostert, 5 Cir., 1942, 131 F.2d 596.

(b) Upon the record in the present case, it cannot be said that appellant's suit was not brought in good faith, nor that as a legal certainty the amount of claimed liability from which appellant seeks relief will not, under Texas law, be successfully asserted against it.

(c) The court erred in dismissing this action for an additional reason. By filing his cross-complaint appellee affirmatively requested the court to decide the controversy alleged to exist in appellant's complaint and to grant him the sum of $14,-035.00 as compensation which is the precise sum appellant alleged to be in controversy.

Booth v. Texas Employers' Insurance Association, 132 Tex. 237, 123 S.W.2d 322 (Tex.Com.App. opinion adopted by the Supreme Court, 1938), a thorough analysis of the procedures of the Workmen's Compensation Law was made. At page 328 of 123 S.W.2d the court declares:

> "* * * The suit to set aside an award of the board is in fact a suit, not an appeal. It is filed as any other suit is filed and when filed the subject matter is withdrawn from the board. Section 5, as amended, of Article 8307, prohibits the board from proceeding further toward the adjudication of the claim after the filing of the suit. The trial in court is de novo, wholly without reference to what may have been decided by the board. It is true that as conditions precedent to the filing of suit the insurer or the employer must have been notified of the injury, claim must have been filed with the board, and the board must have made a final ruling and decision (Section 4a, Article 8307), but these requirements do not negative the fact that a suit is filed and tried, not merely an appeal taken."

Thus, as interpreted by the Supreme Court of Texas, proceedings before the Industrial Accident Board are viewed as mere procedural preliminaries to suit, the so-called "appeal" being in actuality an original action. Once the suit is brought, the Board's findings and award are totally abrogated.

Yet the claim before the Board does have the binding substantive effect of fixing the extent of the insurer's liability as claimed by the employee. In 123 S.W.2d 322, at page 329, the court declares:

> "It has repeatedly been held that, although one claim cannot be filed with the board and another and different claim asserted in court, yet when the injury suffered is of that class of injuries, sometimes called general injuries, for which the compensation is based upon incapacity to work, and not of that class of injuries usually called specific injuries, for which the amount of compensation is fixed by the statute, a general description of the injury is sufficient in the claim made before the board, and that in the suit filed to set aside the award of the board the claim may be enlarged to include all injuries proximately resulting from the accident."

After thus holding, quite logically, that regardless of who files the suit attacking the Board's award, the true controversy concerns the right of the employee to compensation, and, the amount of his claim before the Board fixing the extent of the insurer's claimed liability is the sole indication of the amount actually in controversy, the court, at page 331 sets out the rule governing jurisdictional amount regardless of who files the suit. That rule is:

> "When the claim filed with the board shows the amount claimed, in dollars and cents or by statement of facts from which the amount can definitely be determined and the award of the board is less in amount than that of the claim, the amount shown by the claim is the amount in controversy and the suit should be filed in the court having jurisdiction of that amount."

Appellant alleged in its petition that appellee had made a claim before the Board for total and permanent disability and for compensation in the aggregate amount of $14,035.00; while appellee has filed in this cause a cross-claim asking for the same relief and for the same $14,035.00, all growing out of the same controversy.

In 1936, in a Texas Workmen's Compensation suit, Great American Indemnity Co. v. Dominguez, 84 F.2d 179, 180, an opinion uniformly and many times approved and followed,[2] this court, re-

---

2. Digby v. United States Fidelity & Guaranty Co., 5 Cir., 239 F.2d 569; Pappas v. Royal Indemnity, 5 Cir., 251 F.2d 439.

jecting a district court ruling, in effect that federal courts, in determining their jurisdiction, are not bound to follow state court rulings, declared:

"We think this ruling out of accord with the decisions of the Texas courts which we are bound to follow. These settle that the jurisdiction of a court to hear a suit to set aside a final ruling and decision of the Industrial Accident Board is absolutely dependent upon plaintiffs pleading and proving precise and exact compliance with the essential statutory steps."

In 1937, this court in Heard v. Texas Compensation Ins. Co., 87 F.2d 30, at page 32 said:

"It is settled law that the remedy afforded by the Texas Workmen's Compensation Statutes is exclusive; that the jurisdiction of the District Court is a special jurisdiction and that in a workmen's compensation case every step provided in the statute must be taken as there presented."

Again, in 1942, after the Supreme Court of Texas had in 1938, in the Booth case, dealt specifically, completely, and authoritatively with the matter of trial court jurisdiction of suits to set aside orders of the Board, this court, in General Accident, Fire & Life Assur. Corp. v. Mostert, 131 F.2d 596, declared and followed the rule for determining jurisdiction laid down by the Supreme Court of Texas in the Booth case.

■ In the light of these decisions, we are in no doubt that the district judge in this case was without warrant in determining jurisdiction by any other rule than that there laid down. In addition, we think it clear that, if this court had not already ruled on the matter and it was an open one here, the district court would have erred in denying jurisdiction

under the settled federal rule for determining it, as laid down by the Supreme Court in St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 and Bell v. Preferred Life Assur. Soc., 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15, and by this court in Colonial Oil Co. v. Vining, 5 Cir., 237 F.2d 913, 914, and the many cases from this court cited in it to the same effect. This rule, as restated in the Vining case, is "that the good faith allegations of the complaint that the matter in controversy exceeds the sum of $3000 [$10,000], exclusive of interest and costs, is sufficient to confer jurisdiction unless it appears elsewhere in the complaint or by proof aliunde that less than that amount is involved."

■■ A further and additional reason why jurisdiction should not have been refused in this case is that it is the long established rule that where, as here, the jurisdictional amount is in question, and a counterclaim is brought in an amount which, in itself or added to the amount claimed in the complaint, adds up to an amount in excess of the minimum jurisdictional amount, jurisdiction is established whatever may be the conclusion viewed from the plaintiff's complaint alone. Home Life Ins. Co. v. Sipp, 3 Cir., 1926, 11 F.2d 474; Roberts Min. & Mill Co. v. Schrader, 9 Cir., 1938, 95 F.2d 522; Henderson v. Maryland Casualty Co., 5 Cir., 62 F.2d 107. See also Isenberg v. Biddle, 1941, 75 U.S.App.D.C. 100, 125 F.2d 741; Switzer Bros., Inc. v. Chicago Cardboard Co., 7 Cir., 1958, 252 F.2d 407. This principle is especially applicable in a compensation suit under the Texas Workmen's Compensation Act, which in terms and as pointed out in the Booth case, recognizes the compensation claimant as the real plaintiff in, and master of the suit [3] when, as he has done here, he seeks affirmative relief by cross-action and demands process thereon. Cf.

---

3. 45 Tex.Jur., "Workmen's Compensation", Chapt. 14, "Appeals to the Courts", Sec. 274 et seq. p. 759, and Chapt. 15, "Trial De Novo", Sec. 285 et seq., fully explains the situation in line with these views.

Sec. 295 points out that the statute provides that in all suits to set aside an award the burden of proof shall be upon the party claiming compensation.

Barron & Holtzoff, "Federal Practice and Procedure", Rules Ed. Vol. 1, 1958 Pocket Part, Sec. 370, Rule 12:

"An involuntary plaintiff who filed an answer seeking affirmative relief against plaintiffs by way of counterclaim submitted to the jurisdiction of the court and waived objection to venue. Hook & Ackerman v. Hirsh, D.C., 98 F.Supp. 477."

Cf. Switzer Bros., Inc. v. Chicago Cardboard Co., supra, 252 F.2d at page 411.

The other grounds put forward, in the Chamberlain case and, therefore, by his approval of it by the district judge below, mere make weights whose very statement begs the question proposed to be argued, may be as confidently and summarily disposed of. These are: (1) that federal courts, in order to give full effect to the present amendments withdrawing federal jurisdiction for certain removal cases, must in effect rewrite the statute to make it read on original compensation suits authorized by the Texas statute and the uniform course of federal decisions in this state; and (2) that the Texas statutory compensation suit must be analogized to efforts to have state condemnation proceedings reviewed in the federal courts.

■■ Of the first ground, it is sufficient to say that, while federal courts have power to construe and apply the laws of Congress, they have no power to rewrite, expand, or contract them. Therefore, the categorical statement of the Chamberlain opinion at page 596 of 171 F.Supp., "It is certain that congress did not intend the Federal court to have jurisdiction in such a case as this", as is pointed out in an excellent Texas Law Review Note, Vol. 38 No. 1, p. 117,[4] *flies in the face of the act itself, limiting its reach to removal cases and is, therefore, mere fiating. In short, Congress has withdrawn removal cases concerning Workmen's Compensation laws from Federal Jurisdiction. Congress was aware that certain Workmen's Compensation suits are filed in Federal Courts, under State laws, as original actions. If the intent of Congress had been to withdraw these cases also from federal jurisdiction, it would have said so by the simple insertion of the words "or filed in the United States District Courts". It is highly improper to extend such exclusion without congressional act.*

The second ground is even less substantial. The result of wishful thinking and whistling in the dark, it presents nothing more than shadow boxing, the putting

4. "As to the congressional intent basis for the decision in the principal case, it would appear that such intent, however clearly expressed, should not have the efficacy of law to extend or to amend the scope of a statute involving jurisdiction. Here Congress withdrew federal jurisdiction for certain removal cases not original, actions. Since jurisdiction of the lower federal courts is based solely upon Congressional grant (See McCormick and Chadbourn, Cases on Federal Courts, Ch. 1 (1957).) federal courts should 'scrupulously confine their own jurisdiction to the precise limits which the statute has defined.' (Healy v. Ratta, 1934, 292 U.S. 263, 270 [54 S.Ct. 700, 78 L.Ed. 1248]. *Furthermore, an attempt to apply Congressional intent as law raised additional difficulties in the administration of a federal court system. The policy of reducing litigation in the federal courts is a vague criterion for refusing to accept jurisdiction. Also the policy of allowing the workman his choice of forums is not effected by refusing to accept jurisdiction of original actions where an appeal has been filed in the state court, nor is it defeated by accepting jurisdiction of the original actions, since state courts retain jurisdiction regardless of action in the federal courts.*

"The practical effect of the principal case is that in a controversy meeting federal jurisdiction requirements arising under a state workmen's compensation statute neither party is assured recourse to the federal courts when a state administrative agency has obtained jurisdiction since his opponent may defeat federal jurisdiction by filing in the state court. To refuse to accept jurisdiction under these circumstances is to hold that workmen's compensation cases are an exception to the rule that when there is an in personam action involving a money judgment, federal jurisdiction is concurrent with state jurisdiction." (Emphasis supplied.)

up of a straw man to knock him down. The thing in question here is a thing not of shadow but of substance. It is a right, until Congress takes it away, to bring and maintain in the federal courts on the ground of diversity jurisdiction, suits which, over the long years that have gone since the Texas Workmen's Compensation Act was passed and such suits provided for, have been filed and maintained uniformly in both state and federal courts of Texas,[5] not as a matter of the grace of the courts but of the right of the litigant, a right declared and established long ago by the great Chief Justice, in Cohens v. Commonwealth of Virginia, 19 U.S. 264, at page 404, 5 L.Ed. 257 in these memorable words:

"It is most true, that this court will not take jurisdiction if it should not; but it is equally true, that it must take jurisdiction, if it should. The judiciary cannot, as the legislature may, avoid a measure, because it approaches the confines of the constitution. * * * With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution."

Such suits will continue to be brought and maintained in the same way until Congress, not the courts, withdraws the right.

The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

---

5. In 45 Tex.Jur., p. 730, the text says: "The compensation law does not in terms restrict a review of the decisions of the board to the state courts. Resort is frequently had to the federal courts." Cf. 5 Texas Law Review, p. 448